IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-01511-WYD-BNB

PORT-A-POUR, INC., a Colorado corporation,

     Plaintiff,

v.

PEAK INNOVATIONS, INC., a Colorado corporation, and
MARK E. NELSON, an individual

     Defendants and Counter Claim Plaintiffs

v.

PORT-A-POUR, INC. a Colorado corporation;
JEROME J. DOHERTY; and
NEIL G. OBERG, individuals,

     Counter Claim Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

     THIS MATTER is before the Court on the following motions: (1) Partial Rule

12(b)(6) Motion to Dismiss Counterclaims for Failure to State a Claim Upon Which

Relief Can Be Granted and Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter

Jurisdiction; (2) Motion of Port-a-Pour, Inc., Jerome J. Doherty and Neil G. Oberg to

Correct Caption and Designation of Parties and Claims; (3) Motion to Dismiss Plaintiff's

First and Second Claims; and (4) Plaintiff's Request for Judicial Notice and

Authentication.  These motions are fully briefed.

II.   BACKGROUND

By way of background and per the allegations of the First Amended Complaint and Jury Demand ["Amended Complaint"], Plaintiff Port-a-Pour, Inc. ["Port-a-Pour"] alleges that it provides concrete batch plants and related products to construction firms and related companies throughout the United States.  (Am. Compl. ¶ 8.)  It developed a low-profile concrete batch plant that uses several proprietary technologies and processes, known as the "Port-a-Pour."  (*Id.* ¶ 9.)

On or about February 1, 2006, Port-a-Pour entered into a Licensing Agreement with Peak Innovations, Inc. ["Peak"] whereby it licensed its pending patents, protected information and trademark and granted Peak certain rights to manufacture and sell batch plants and plant support equipment.  (Am. Compl. ¶ 18.)  Peak allegedly defaulted on its allegations under the Licensing Agreement and the Agreement was terminated. (*Id.* ¶ 28.)  Port-a-Pour alleges that despite this termination, Peak continues to manufacture and sell concrete batch plants and related equipment incorporating Port-a-Pour's protected information and patented systems without legal authorization and in derogation of Port-a-Pour's rights.  (*Id.* ¶¶ 31-32.)  Port-a-Pour asserts claims against Peak and Mark E. Nelson ["Nelson"] for patent infringement, unauthorized use of its registered trademark in violation of the Lanham Act, infringement of its registered trademark, violation of the Cyberpiracy Prevention Section, misuse of protected information in violation of Colorado's Uniform Trade Secrets Act, breach of licensing agreement, breach of a first and second confidentiality agreement, and civil conspiracy.

Counterclaims were filed by Defendants Peak and Nelson ["Counterclaim Plaintiffs"].  (*See* Answer, Affirmative Defenses & Counterclaims of Peak Innovations, Inc. & Mark E. Nelson, ECF No. 28 [hereinafter "Counterclaims"].)  Counterclaim Plaintiffs sue Port-a-Pour as well as Jerome J. Doherty ["Doherty"] and Neil G. Oberg ["Oberg"] asserting claims seeking declarations of non-infringement and invalidity of Port-a-Pour's patents, cancellation of Port-a-Pour's federal trademark registration, breach of contract, fraud based on misrepresentation, and negligent misrepresentation causing financial loss in a business transaction.

Port-a-Pour, Oberg and Doherty [collectively "the Port-a-Pour Parties"] filed a partial motion to dismiss seeking to dismiss Peak's counterclaims for (a) fraud based on misrepresentation; (b) negligent misrepresentation causing financial loss in a business transaction; and (c) breach of contract for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  They also seek dismissal under Fed. R. Civ. P. 12(b)(1) of all counterclaims asserted by Mark E. Nelson ["Nelson"] for lack of subject matter jurisdiction.  The motion to correct the caption seeks to amend the caption of the case and the designation of the claims against Doherty and Oberg as "Third Party Claims," Doherty and Oberg as "Third Party Defendants" and the designation of Peak Innovations and Mark E. Nelson as "Third Party Plaintiffs" with respect to such claims.

Also pending is Peak and Nelson's motion to dismiss the patent infringement claims (the first and second claims), asserting that Port-a-Pour's patent infringement claims should be dismissed because it willfully failed to show that it is the valid assignee

of the patents and has standing to bring suit for their infringement.  In response, Plaintiff

filed a Request for Judicial Notice and Authentication, attaching the Assignment.

III.     ANALYSIS

      A.     Motion to Correct Caption and Designation of Parties and Claims

      I first address the Port-a-Pour Parties' Motion to Correct Caption and Designation

of Parties and Claims, since it impacts the partial motion to dismiss discussed in the

following section.  The motion seeks to correct the caption of this case and the

designation of the claims against Doherty and Oberg.  Specifically, it asserts that

Doherty and Oberg are improperly designated as "Counter Claim Defendants" even

though they are not plaintiffs to the original action.  Accordingly, the motion asserts that

their correct designation is "Third Party Defendants."  Additionally, the motion contends

that the claims against Doherty and Oberg are "Third Party Claims," not "Counter

Claims," and that Peak and Nelson are "Third Party Plaintiffs," not "Counter Plaintiffs"

with respect to the Amended Complaint.

      I find that the motion should be granted.  The Port-a-Pour Parties are correct,

and Peak and Nelson do not dispute, that the caption is incorrect.  Doherty and Oberg

were not plaintiffs to the case and are thus not "Counter Claim Defendants".  Instead,

their correct designation is "Third Party Defendants."  Also, the claims against Doherty

and Oberg are "Third Party Claims", not "Counter Claims".  Finally, Peak and Nelson

are "Third Party Plaintiffs", not "Counter Plaintiffs" with respect to the Third Party

Claims.

While Peak and Nelson object to the motion as "a back door effort to circumvent the decision of the Court" on the Port-a-Pour Parties' partial motion to dismiss and ask that the motion be denied without prejudice pending resolution of that motion (Resp. Mot. Correct Caption at 2, ECF No. 56), this would be improper.  Instead, the motion to correct the caption is appropriate and relevant because Peak and Nelson attempt to invoke Colorado's counterclaim revival statute as to Doherty and Oberg which they have improperly characterized as Counter Claim Defendants.  *See* Section III.B, *infra*. Further, Peak and Nelson admit that they "have no objection to a correct caption for this case."  (Resp. Mot. Correct Caption, ECF No. 56, at 2.)  Thus, they may not circumvent arguments in the motion to dismiss through asking that the motion to correct the caption be deferred.

B.    Partial Motion to Dismiss Counterclaims

1.    Standard of Review

In reviewing a motion to dismiss, the court must "accept all well-pleaded facts as true and view them in the light most favorable" to the party asserting the claim.  *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs of Cnty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011).  To survive a motion to dismiss under Rule 12(b)(6), the party asserting the claim "must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'"  *Id*. (quotation and internal quotation marks omitted).  "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id*. (quotation omitted).  Thus, a party asserting a claim "must include enough

facts to 'nudge[] his claims across the line from conceivable to plausible.'"  *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quotation omitted).  Conclusory allegations are not sufficient to survive a motion to dismiss.  *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

The portion of the motion that seeks dismissal under Rule 12(b)(1) mounts a facial attack on the sufficiency of the allegations in the complaint.  In construing such an attack under 12(b)(1), the court "must accept the allegations in the complaint as true."  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

### 2.   Analysis of the Merits of the Motion

#### a.   Uncontested Counterclaims

I first agree with the Port-a-Pour Parties that the breach of contract counterclaim must be dismissed as to Doherty and Oberg because they are not parties to the contract.  I also dismiss all of the counterclaims brought by Nelson as he is not a licensee of any of the rights that are the subject of the patent and trademark counterclaims and is not a party to the License Agreement which is the subject of the misrepresentation and breach of contract counterclaims.  As a non-party to the License Agreement, Nelson has no standing to assert counterclaims, and must be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1).  *See Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (lack of standing treated as lack of subject matter jurisdiction under Rule 12(b)(1)); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006 (where the district court dismisses an action for lack of jurisdiction, the dismissal must be without prejudice).  Finally, I dismiss Peak's breach of

-6-

contract counterclaim for Port-a-Pour's alleged failure to pay "royalties," as it is unsupported under the contract and as pled.  Counterclaim Plaintiffs do not contest the dismissal of these counterclaims.  I now turn to the contested counterclaims.

b.    Misrepresentation Claims

Counterclaim Plaintiffs allege that the Port-a-Pour Parties fraudulently misrepresented past and present fact in negotiation and formation of the business relationship between the parties.  The fraudulent misrepresentations alleged included the Port-a-Pour Parties' representations regarding information they possessed necessary to build a working concrete batch plant, the number of labor hours required to build such a plant, the cost of materials, and that they possessed working software for the plant.  (Counterclaims ¶¶ 84-97.)  Counterclaim Plaintiffs allege that the Port-a-Pour Parties made these statements to induce them to enter a business relationship with the corporation the individual Port-a-Pour Defendants owned and are now trying to hide behind.  Counterclaim Plaintiffs similarly allege that the Port-a-Pour Parties negligently misrepresented past and present facts in the negotiation and formation of the business relationship.  (*Id*. ¶¶ 98-103.)  Specifically, Counterclaim Plaintiffs allege the Port-a-Pour Parties gave false information as detailed in the Amended Complaint with the intent, or knowing that, Peak would rely on that information in making its decision to enter into the Licensing Agreement and other agreements.  (*Id*. ¶¶ 98-103.)

The Port-a-Pour Parties assert that the misrepresentation claims dress up a breach of contract claim by alleging that the obligations agreed to in the contract were "representations" that induced Peak to enter into the contract in the first place.  They

argue that the economic loss doctrine bars the resulting tort claims, as the allegations are nothing more than the provisions of the contract itself, restated as "representations." Port-a-Pour's "duty" to perform the terms of the License Agreement arises from the contract, not from pre-contractual discussions.  In these circumstances, the Port-a-Pour Parties argue that Peak's remedy, if there is one, lies in a contract action.

I agree with the Port-a-Pour Parties that the misrepresentation claims (both fraud and negligent misrepresentation) are barred by the economic loss doctrine.  The economic loss rule "serves to maintain a distinction between contract and tort law." *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000).  "The essential difference between a tort obligation and a contract obligation is the source of the duties of the parties."  *Id.*  "Tort obligations generally arise from duties imposed by law."  *Id.*  "In contrast, contract obligations arise from promises made between the parties."  *Id.* "Limiting tort liability when a contract exists between parties is appropriate because a product's potential nonperformance can be adequately addressed by rational economic actors bargaining at arms length to shape the terms of the contract."  *Id.*

Thus, "a partying suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Town of Alma*, 10 P.3d at 1262.  In other words, "[a] breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie."  *Id.*  A breach of a duty arising independently of any contract duties between the parties, however, may

support a tort action." *Id.* "The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action." *Id.*

In the case at hand, I agree with the Port-a-Pour Parties that the issues that underlie the misrepresentation claims are the same ones for which Peak seeks contract damages. *(Compare* Counterclaims ¶¶ 78-80—alleged breaches of contract based on failure to perform "promises"—with ¶¶ 84-90—identical alleged "misrepresentations" underlying misrepresentation claims). The "duty" at issue arose from the promises made between the parties regarding the contractual obligations, as the "promises" or "representations" at issue were negotiated terms of the parties' contract. (*See* Partial Rule 12(b)(6) Mot. to Dismiss Counterclaims, ECF No. 33, at 3-4.) Peak and Nelson's argument that because the promises or representations were made before the contract was signed, Port-a-Pour's duty to keep those promises is not supplanted by the contract is misplaced. The question is not *when* the so-called "duty" arises, but whether it is established by the contract between the parties. In this case, the duty is clearly established by the contract.

I also find that the misrepresentation claims against Oberg and Doherty are barred by the relevant statutes of limitation.[1] Fraud claims are governed by a three-year limitations period, Colo. Rev. Stat. § 13-80-101(1)(c), and claims for negligent misrepresentation are governed by a two-year limitations period. *Id.*, § 13-80-102(1)(a).

---

[1] The counterclaim revival statute applies to the misrepresentation claims asserted against Plaintiff Port-a-Pour; thus, the misrepresentation claims are not time-barred as to Port-a-Pour. *See* Colo. Rev. Stat. § 13-80-109 (allowing otherwise untimely counterclaims to be asserted if the counterclaim was a compulsory one, *i.e.* that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim). The counterclaim revival statute does not apply to the claims against Oberg and Doherty because they are third party claims, as discussed above in section III.A, *supra*.

The agreements in question were entered into in February 2006 and July 2007. (Am. Compl. ¶¶18-20 and Exs. C, D and E.)  The License Agreement (*Id.*, Ex. C) provided that "Licensee [Peak] shall manufacture at least two (2) units in the first year (February 1, 2006 through March 1, 2007)."  It also required that "Licensee shall forthwith after February 1, 2006, build at least two (2) units and will maintain at least two (2) completed units as inventory at all times while this Agreement is in existence."  (*Id.*) Peak alleges that it "performed all of its obligations under the License Agreement." (Counterclaims ¶ 77.)  Taking this allegation as true, Peak built at least two plants before March 1, 2007, as required under the License Agreement.

Further, Peak and Nelson allege that "after entering into the licensing agreement it became evident that the system that [Port-a-Pour] offered would not work as designed and was merely a combination of elements that had been combined by others in the materials handling business" (Counterclaims ¶ 38), that this prompted Peak to modify Port-a-Pour's designs to make them operational (*id.* ¶ 42), and that even these efforts failed to make Port-a-Pour's product commercially viable (*id.* ¶48).  Assuming the truth of its allegations, Peak could not help but discover the alleged misrepresentations as it started building its first unit—which was completed not later than March 1, 2007.  There is no way for Peak to complete a concrete batch plant without discovering that it had not received drawings, purchasing and vendor lists, and software.  And Peak obviously discovered the true costs of building a concrete batch plant—and the existence of any misrepresentation about this matter—when it built one, which occurred no later than March 1, 2007.

-10-

As a consequence, the negligent misrepresentation claim asserted against Doherty and Oberg must have been brought no later than March 1, 2009, and the fraudulent misrepresentation claim no later than March 1, 2010.  Since the claims were not brought until August 19, 2013, the fraud and negligent misrepresentation counterclaims against Doherty and Oberg are time-barred.

c.     <u>Peak's Breach of Contract Claim</u>

While I previously found that the breach of contract claim must be dismissed as to Doherty and Oberg because they are not parties to the contract, I also find that dismissal of this claim is appropriate as to Doherty and Oberg because it is time barred. A breach of contract claim is subject to a three year limitations period.  Colo. Rev. Stat. § 13-80-101(1)(a).  For the same reasons discussed above in connection with the misrepresentation claims, Peak would have known of the breach of contract claim by no later than March 1, 2007, more than three years before the filing of the counterclaims.

C.     <u>Defendant's Motion to Dismiss First and Second Claims and Plaintiff's Request for Judicial Notice and Authentication</u>

Peak and Nelson seek to dismiss the patent infringement claims (the first and second claims) on the basis that Port-a-Pour has willfully failed to identify in mandatory Rule 26 disclosures and discovery any assignment documents for the Court to review to evidence standing for either of its patent infringement claims.  They argue that Port-a-Pour cannot do so at this stage in the proceedings, and that Plaintiff's first and second claims must be dismissed for lack of standing.

Relevant to the motion, the first claim for relief in the Amended Complaint alleges infringement of United States Patent 6,876,904 ("the '904 patent").  The second claim for relief alleges infringement of United States Patent 7,050,886 ("the '886 patent").  Port-a-Pour alleges that the '904 patent and the '886 patent have been assigned to it.  (Am. Compl. ¶¶ 12-13.)  Defendants argue that these bald allegations form the sole basis for subject matter jurisdiction for Port-a-Pour to bring the claim.  They further assert that despite all their efforts to have Port-a-Pour identify or produce the purported assignment documents, none were ever provided or disclosed in Rule 26 disclosures or in discovery responses.  Discovery closed in this matter on April 30, 2014, and Port-a-Pour made clear in its discovery responses that "no other documents exist" concerning the '904 patent or the '886 patent.

Peak and Nelson assert that before filing the motion, they gave Port-a-Pour one last opportunity to address the issue and to produce a copy of the assignments and to supplement its disclosures.  Port-a-Pour responded, "the assignment from Mr. Doherty and Mr. Oberg to Port-A-Pour is a matter of public record – *which you have apparently not bothered to obtain or review*."  (Mot. Dismiss Pl.'s First and Second Claims, ECF No. 909, Ex. 5.)  Port-a-Pour reiterated what it had told Defendants previously: "these are public documents, which you may review or copy, just like anyone else" and "[*i*]f you file your threatened motion, *we will order a copy* of the assignment [sic] from the U.S. Patent and Trademark Office, and provide it to the Court – which [sic] will review this public record, observe its validity . . ." *(Id.)*

Defendants argue that the responses of Port-a-Pour and its counsel concerning the written assignments is not an excuse.  "Rule 26(a)(1) does not permit a party to avoid its mandatory discovery obligations by arguing that the other side could have relied on its own resources to obtain the same information."  *Lobato v. Ford*, No. 05-cv-01437-LTB-CBS, 2007 WL 2593485, at * 6 (D. Colo. Sept. 5, 2007).  They further argues that it is not their obligation to attempt to locate documents to make Port-a-Pour's prima facie case or to demonstrate standing.  Defendants conclude that only if there is a substantial justification for failing to disclose the information should Port-a-Pour be allowed to attempt to cure the problem at this late date.

In response, Port-a-Pour argues that Defendants' motion must be denied because the public records reveal that Doherty and Oberg did, in fact, assign the patents to Port-a-Pour.  It points to the Request for Judicial Notice which asks the court to take judicial notice of the Assignment of Patent Application from Neil Oberg and Jerome J. Doherty to Port-a-Pour, Inc. dated April 30, 2014 [the "Assignment"], attached as Exhibit 1 to that motion.  I note at the outset that I may consider the Assignment of Patent without converting the motion into a summary judgment motion since Defendants are challenging standing, an issue of subject matter jurisdiction.  *Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (lack of standing treated as lack of subject matter jurisdiction).  A court has wide discretion to allow affidavits and other documents outside the pleadings to resolve jurisdictional facts.  *Sizova v. National Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002).

Turning to my analysis, Defendants are correct that to have standing to bring patent infringement claims, a corporate entity such as the plaintiff must produce an assignment and the court must determine that assignment's validity. *Abraxis Bioscience, Inc. v. Navinta, LLC*, 625 F.3d 1359, 1363-4 (Fed. Cir. 2010).  Exhibit 1 to the Request for Judicial Notice states that Oberg and Doherty filed the Assignment of Patent Application recorded at Patent Reel 014622/Frame 0545 with the Patent and Trademark Office on May 12, 2004.  By that Assignment, Oberg and Doherty did "hereby sell, assign and transfer to Assignee [Port-a-Pour], its successors and assigns, the entire right, title and interest, including the right of priority, in, to and under an application for Letters Patent of the United States entitled: Portable Concrete Plant Dispensing System, Filing Date 12/17/2003, Serial Number 10/738,845, and the invention(s) and improvement(s) set forth therein, and any and all continuations, continuations-in-part (C-I-P's), divisionals and renewals of and substitutes for said Letter Patent…"  *See* Assignment at Reel 014622/Frame 0545.  The application assigned by the Assignment (Serial No. 10/738,845) appears on the issued '904 Patent. (Am. Compl., Ex. A.)  As stated on its face, the '886 Patent (*id.*, Ex. B) is a "Division of application No. 10/738,845, filed on Dec. 17, 2003, now Pat. No. 6,876,904."

It appears from the foregoing that Port-a-Pour has now provided evidence that Oberg and Doherty assigned the patents to Port-a-Pour, and that Port-a-Pour has standing to enforce the Patents.  Defendants make no substantive argument that the Assignment is ineffective to convey the Patents from Oberg and Doherty to Port-a-Pour. To the extent Defendants believe the Assignment as produced is ineffective or invalid,

-14-

they would need to file another motion setting forth a basis for such argument.  The

question at this juncture is whether Port-a-Pour should be sanctioned for failing to

produce this document in its Rule 26 disclosures, in discovery, or in response to

Defendants' request for the information.

I note that "[w]here a party fails to comply with Rule 26(a)(1), Fed. R. Civ. P.

37(c)(1) requires the imposition of sanctions unless the court determines that the failure

to disclose was substantially justified or harmless." *Lobato*, 2007 WL 2593485, at *7.

"The non-moving party has the burden of showing that they were substantially justified

in failing to comply with Rule 26(a)(1)." *Id.* "While Rule 37(c)(1) is written in mandatory

terms, it also vests the court with discretion to impose 'other appropriate sanctions' in

addition to or in lieu of an order striking witnesses or evidence not properly disclosed."

*Id.* "[A] party's failure to disclose is substantially justified where the non-moving party

has a reasonable basis in law and fact, and where there exists a genuine dispute

concerning compliance." *Id.* at *8. "'Failure to comply with the mandate of [Rule 26(a) ]

is harmless when there is no prejudice to the party entitled to the disclosure.'" *Id.*

(quotation omitted).  As further stated in *Lobato*:

> The determination of whether a Rule 26(a) violation is justified or harmless
> is entrusted to the broad discretion of the district court. A district court need
> not make explicit findings concerning the existence of a substantial
> justification or the harmlessness of a failure to disclose. Nevertheless, the
> following factors should guide its discretion: (1) the prejudice or surprise to
> the party against whom the testimony is offered; (2) the ability of the party to
> cure the prejudice; (3) the extent to which introducing such testimony would
> disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Id.* (quoting *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.,* 170 F.3d

985, 993 (10th Cir. 1999)).  "The court will similarly construe the 'substantial justification'

requirement in Rule 26(g)(1)." *Id.*

I have carefully considered the relevant factors and the objectives underlying Rule

37(c), and find that the sanctions requested by Defendants, *i.e.*. precluding use of the

Assignment and dismissing the patent infringement claims for lack of standing, is not

warranted under the facts in this case.  *See Lobato*, 2007 WL 2593485, at *10 (citing

*Johnson Electric North America Inc. v. Mabuchi Motor America Corp.*, 77 F.Supp.2d 446,

458 (S.D.N.Y.1999) (recognizing that preclusion of evidence not disclosed in discovery is

a drastic remedy that should only be applied "where the failure to disclose represents a

flagrant bad faith and callous disregard of the rules"); *Holsinger v. Wolpff & Abramson,*

*LLP*, 2006 WL 1439575 (N.D.Cal.2006) (declining to impose an evidence-preclusion

sanction where defendant's Rule 26(a)(1) disclosures failed to include an identification of

the subjects of the disclosed individual's discoverable information; held that the

substance of discoverable information could have been easily determined through

deposition)).

While I think that the better course would have been for Port-a-Pour to produce

the Assignment in discovery, it appears uncontested that Port-a-Pour and its agents

Doherty and Oberg did not have a copy of it within their possession, custody, or control.

Fed. R. Civ. P. 26(a)(1)(ii).  Moreover, Port-a-Pour is correct that cases have held that

discovery need not be required of documents of public records which are equally

accessible to all parties.  *See Snowden by and Through Victor v. Connaught*

*Laboratories, Inc.*, 137 F.R.D. 325, 333 (D. Kan. 1991) (citing  *S.E.C. v. Samuel H. Sloan*

& Co., 369 F. Supp. 994, 995 (S.D. N.Y. 1973)).  The Patents and Assignment are public

records.  As stated by another court:

> It is held that 'issuance of a patent and recordation in the Patent Office
> constitutes notice to the world of its existence.' *Wine Railway Appliance
> Co. v. Enterprise Railway Equipment Co.*, 297 U.S. 387, 393, 56 S.Ct. 528,
> 529, 80 L.Ed. 736 (1936);. . . . *By the same token, recordation of the
> assignment to plaintiff imparted like 'notice to the world of its existence.'*
> *Teall v. Schroder*, 158 U.S. 172, 15 S.Ct. 768, 39 L.Ed. 938 (1895).
> Accordingly intervener is charged with presumptive knowledge on February
> 21, 1950, of both the fact of issuance of the letters patent and the fact of
> assignment to plaintiff.

*Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 157 (S.D. Cal. 1954) (emphasis

added).

Moreover, even if Port-a-Pour was required to produce the Assignment in

discovery or in its Rule 26 disclosures, I find no prejudice or surprise to Defendants in

connection with the failure to disclose same.  *See Lobato*, 2007 WL 2593485, at *7

("Ultimately, a party's compliance with Rule 26(a)(1) and Rule 26(g)(1) must be

measured against the salutory purposes underlying those Rules, which are to accelerate

the exchange of basic information and prevent a party from being unfairly surprised.).

On their face, the patents filed with the Amended Complaint state that Port-a-Pour is the

assignee.  (Am. Compl., Exs. A and B.)  Further, Port-a-Pour points out that Peak

ordered the patent prosecution files from the United States Patent and Trademark Office

["USPTO"], and is clearly familiar with the process of obtaining documents from that

office.  (*See* Defs.' Second Supplemental Initial Disclosures dated April 4, 2014, at 19

subparagraph c, Ex. A to Pl.'s Resp. to Peak's Mot. to Dismiss Pl.'s First and Second

Claims, ECF No. 117.)  Also, Port-a-Pour explicitly advised Peak to obtain the

Assignment from the USPTO and review it before Peak filed the instant motion.  I also find that Defendants have not demonstrated Port-a-Pour's bad faith or willfulness.  *See Attorneys Title Guar. Fund v. Goodman*, 179 F. Supp. 2d 1268, 1277 (D. Utah 2001) ("'Bad faith' is the antithesis of good faith and has been defined in the cases to be when a thing is done dishonestly and not merely negligently. It is also defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.") (quotation and internal quotation marks omitted) (cited in *Lobato*, 2007 WL 2593485, at *9).

Accordingly, Defendants' Motion to Dismiss Plaintiff's First and Second Claims is denied.  As to the Request for Judicial Notice and Authentication, while I have acknowledged the Assignment for purposes of Defendants' motion to dismiss, I see no reason at this juncture to take judicial notice of the Assignment.  Indeed, Peak does not dispute the existence, contents and recording of the documents.  (*See* Resp. to Request for Judicial Notice and Authentication, ECF No. 121, at 2.)  Accordingly, the  Request for Judicial Notice and Authentication is also denied.[2]

III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that the Motion of Port-a-Pour, Inc., Jerome J. Doherty and Neil G. Oberg to Correct Caption and Designation of Parties and Claims (ECF No. 52) is **GRANTED**.  However, it appears that the claims asserted against Doherty and Oberg

---

[2] I note that Port-a-Pour did not comply with D.C.COLO. LCivR 7.1(a) in connection with this motion.  While I have not stricken it on this basis, I advise Port-a-Pour in the future to ensure compliance with this rule or risk the striking of its motions.

have been dismissed.  If this is accurate, there is no need to amend the caption in regard to this motion.  It is

FURTHER ORDERED that Counter Claim Defendants Port-a-Pour, Inc., Jerome J. Doherty, and Neil G. Oberg's Partial Rule 12(b)(6) Motion to Dismiss Counterclaims for Failure to State a Claim Upon Which Relief Can Be Granted and Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 33) is **GRANTED** as set forth herein.  The following counterclaims and/or third party claims are dismissed:  (1) Nelson's claims; (2) Peak's breach of contract claim as to Doherty and Oberg; (3) Peak's breach of contract claim as to Port-a-Pour as to its alleged failure to pay "royalties" (but not as to the rest of the claim); and (4) the fraud and negligent misrepresentation claims. Nelson's claims are dismissed without prejudice.  The other claims are dismissed with prejudice.  It is

FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's First and Second Claims (ECF No. 99) is **DENIED**.  Finally, it is

ORDERED that Plaintiff's Request for Judicial Notice and Authentication (ECF No. 118) is **DENIED**.

Dated:  July 14, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge