# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-1511-WYD-NYW

PORT-A-POUR, INC., a Colorado corporation

     Plaintiff

v.

PEAK INNOVATIONS, INC., a Colorado corporation, and
MARK E. NELSON, an individual

     Defendants and Counterclaim-Plaintiffs

v.

PORT-A-POUR, INC. a Colorado corporation;
JEROME J. DOHERTY; and
NEIL G. OBERG, individuals

     Counterclaim Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Nina Y. Wang

This action comes before the court on the Motion for Leave to Amend Complaint to Withdraw Patent Infringement Claims ("Plaintiff's Motion to Amend") filed on April 17, 2015 [#215], which was referred to the undersigned Magistrate Judge for disposition pursuant to an Order Referring Case dated June 18, 2013 [#9], the Reassignment dated February 9, 2015 [#196], and the Memorandum dated June 16, 2015 [#222]. The court has reviewed Defendants' Response to the Motion for Leave to Amend Complaint ("Defendants' Opposition"), the entire court file, the relevant case law, and the comments of counsel during Supplemental Scheduling Conference held on April 8, 2015 [#213]. Finding that further oral argument would not assist in

1

the disposition of Plaintiff's Motion to Amend, the court hereby respectfully RECOMMENDS the instant motion be GRANTED for the following reasons.

## BACKGROUND

Because the history of this case has been recounted by the court in other instances, *see e.g.,* [#197], this section will focus on the facts and procedural history relevant to the instant Motion to Amend. Plaintiff Port-a-Pour ("Plaintiff" or "Port-a-Pour") initiated this action by filing a Complaint and Jury Demand on June 12, 2013. [#1]. In that Complaint, Port-a-Pour asserted a claim for infringement of United States Patent No. 7,050,886 ("'886 Patent"), and alleged that such infringement was and continued to be willful. [*Id.* at ¶¶ 35-41]. Plaintiff also alleged that Defendants Peak Innovations, Inc. ("Peak") and Mark E. Nelson ("Nelson") (collectively, "Defendants") conspired to infringe the '886 Patent. Port-a-Pour also alleged claims for trademark infringement; violations of the Cyberpiracy Prevention provisions of the Lanham Act; trade secret misappropriation under the Colorado Uniform Trade Secrets Act; breach of a licensing agreement between Port-a-Pour and Peak; and breach of confidentiality agreements between Port-a-Pour and Defendants. [#1]. Plaintiff then amended its Complaint on July 10, 2013, to add a claim for infringement of United States Patent No. 6,876,904 ("'904 Patent") [#23]. In their Answer to the Amended Complaint, Defendants asserted defenses of non-infringement and invalidity of both the '904 and '886 Patents (collectively, "Patents-in-Suit"), and counterclaims for a declaratory judgment of non-infringement and invalidity for both. [#28]

The court entered a Scheduling Order for the case on November 1, 2013. [#41]. In that Scheduling Order, the Parties identify the claims for infringement of the Patents-in-Suit, as well as the defenses and counterclaims of non-infringement and invalidity. [*Id.* at 3-4]. The Parties

did not, however, request a schedule for briefing the meaning of the terms of the Patents-in-Suit, request a hearing for claim construction, or identify any special issues related to the claims for patent infringement or the defenses or counterclaims of non-infringement and invalidity. [*Id.*] The deadline for joinder of parties and amendment of pleadings was set for December 13, 2013. [*Id.* at 10].

At the time of the Scheduling Conference, Plaintiff had filed a Motion for Preliminary Injunction [#35]. On June 17, 2014, after full briefing, an evidentiary hearing, and argument, the Honorable Wiley Y. Daniel issued Findings of Fact and Conclusions of Law. [#122]. As part of Judge Daniel's Findings of Fact, he determined that Port-a-Pour's designs are protected by the two Patents-in-Suit. [*Id.* at 3, ¶ 2]. Judge Daniel found that the co-inventors of the '886 Patent testified credibly that the chemical metering system depicted on Peak's website infringed the '886 Patent, and that Peak had failed to offer much evidence in its attempt to demonstrate invalidity of the '886 Patent. [*Id.* at 43-45]. The court then concluded that Port-a-Pour had established a likelihood of success on the merits as to Peak's infringement of the '886 Patent. [*Id.* at 45-46]. The court did not pass on the likelihood of infringement of the '904 Patent, but also concluded that Port-a-Pour had established a likelihood of success on the merits on its breach of contract claim based on Peak's offer for sale Port-a-Pour's chemical metering system which is proprietary information in breach of its contractual obligations and misappropriation of trade secrets . [*Id.* at 38, 42]. The court then found that the evidence demonstrated that "[d]espite Peak's agreement that its rights to Port-a-Pour's products and *proprietary information* related to same would terminate and revert to Port-a-Pour upon termination of the Licensing Agreement … the evidence shows that Peak continued to use those rights illegally as discussed

in connection with the likelihood of success factor." [*Id.* at 48]. The court then found both irreparable harm and public interest, and entered the following preliminary injunction:

> Defendants Mark Nelson and Peak Innovations, Inc., its officers, directors, employees, agents and representatives, are enjoined from:
>
> a. The manufacture, sale, advertisement of, or offer for sale the following horizontal silos derived from the Port-a-Pour Auxiliary Silo: the Lo-Pro 1600, Lo-Pro 6-11 or 6-12, either as standalone products or as components of plants;
>
> b. The manufacture, sale, advertisement of, or offer for sale of any chemical metering system infringing on the '886 Patent, including, without limitation, the chemical metering system depicted on Peak's web site in the fall of 2013, or any product including or incorporating such a chemical metering system;
>
> c. The sale, advertisement of, or offer for sale of any product bearing the "Port-a-Pour" Trademark, or any other use of such trademark.

[*Id.* at 54]. The court based the injunction directed at the chemical metering system solely on the alleged infringement of the '886 Patent, not the misappropriation of trade secrets. [*Id.*]

The Parties proceeded through discovery, and filed a number of motions related to the Patents-in-Suit. Defendant sought to dismiss the patent infringement claims, arguing that Port-a-Pour lacked standing to assert them. [#99]. After full briefing, the court denied that motion on July 14, 2014. [#133]. Port-a-Pour then filed a Motion for Judicial Notice and Order Affirming Port-a-Pour's Standing to Enforce the Patents. [#162]. After briefing on the issue, the court granted the motion. [#184]. The Parties filed respective Motions for Partial Summary Judgment, each seeking summary judgment of either infringement or non-infringement. [#130, #144]. Port-a-Pour also sought summary judgment of Defendants' counterclaims seeking a declaratory judgment of non-infringement and invalidity. [#130]. Port-a-Pour also sought contempt against Defendants for allegedly violating the court's preliminary injunction, including "offering for sale one or more products incorporating the chemical metering system protected by the '886 Patent." [#181]. The court then set a hearing to address the various patent issues,

noting "neither motion addresses the claims in the patents in any detail, discusses disputed terms in the patents, or asks for an interpretation of the claims. Further, a *Markman* hearing has not been requested. The patent claims are thus relatively undeveloped and lacking in detail, as are Defendants' counterclaims of noninfringement and invalidity." [#195]. A week later, the court denied the Parties' cross-motions for partial summary judgment. [#197].

On March 6, 2015, Plaintiff attempted to withdraw the patent infringement claims and proceed to trial. [#205]. Defendants objected to the withdrawal, and noted "that dismissal of its patent infringement claims does not cause dismissal of Defendants counterclaims [for non-infringement and invalidity] concerning the patents-in-suit." [#206]. The court then issued an order denying Plaintiff's request to withdraw the patent infringement claims without prejudice. [#207]. The court also determined that the Parties were not prepared to go to trial on the patent issues, and referred them to the undersigned Magistrate Judge for a further Scheduling Conference, consistent with the District's Pilot Program Implementing Proposed Local Patent Rules. [*Id.*]

The undersigned Magistrate Judge held such a Scheduling Conference, at which time the Parties offered a proposed Scheduling Order that reflected almost no agreement but reported the following:

> Plaintiff has offered to dismiss the patent infringement claims with prejudice, or, in the alternative to enter into a stipulation or consent order containing a covenant not to sue the defendants for infringement of the patents. Plaintiff believes this order would render the counterclaim for declaration of non-infringement moot, as no case or controversy would exist between the parties. Defendants have argued that the counterclaim for invalidity would nevertheless be justiciable because it would be a defense to the breach of contract claim(s). This is a threshold matter of law that the Court will need to determine in any event before trial for purposes of jury instructions, which will depend on an interpretation of the contracts, as a matter of law.

[#211 at 17]. The undersigned then ordered the Parties to meet and confer as to scope of a covenant not to sue with respect to the Patents-in-Suit, and file an appropriate Motion for Leave to Amend the Complaint. The Parties did so, but still could not agree to the dismissal of the patent infringement claims, and accordingly, Port-a-Pour filed a Motion for Leave to Amend Complaint to Withdraw Patent Infringement Claims ("Motion to Amend") on April 17, 2015 [#215]. As an exhibit to the Motion to Amend, Port-a-Pour included correspondence provided to Defendants that provided, in pertinent part:

> Port-a-Pour hereby knowingly and willingly waives any further right to bring any action against Peak Innovations, Inc. and/or Mark Nelson (collectively, "Defendants") for infringement of U.S. Patent No. 6,876,904 (the "'904 Patent") or U.S. Patent No. 7,050,886 (the ""'886 Patent"). Further, Port-a-Pour covenants not to sue Defendants for infringement of the '904 Patent and/or the '886 Patent.
>
> This waiver and covenant not to sue is intended to forever bar any claim by Port-a-Pour against Defendants, or either of them, for infringement of the '904 and/or '886 Patent, and Port-a-Pour intends that this waiver and covenant not to sue should be construed broadly by any court to give effect to such waiver and covenant not to sue.

[#215-2]. Plaintiff expressly conditioned the covenant not to sue on the court's acceptance of the Second Amended Complaint that was attached as [#215-1].

Defendants contend that Plaintiff should not be permitted leave to dismiss the patent infringement claims, because such withdrawal would be both unfairly prejudicial and a result of undue delay. [#218 at 3]. Alternatively, should the court permit Plaintiff to amend its operative complaint to eliminate the patent infringement claims, Defendants should be permitted to seek modification of the preliminary injunction; reopen discovery and file any necessary motions; and move immediately for reimbursement of attorney's fees and costs. [*Id.*]

## ANALYSIS

**I.      Standard of Review**

After a Scheduling Order deadline, a party seeking to amend pleadings must satisfy a two-prong test: (1) good cause for seeking modification of the Scheduling Order under Rule 16(b)(4) and (2); and (2) satisfaction of the Rule 15(a) standard. *See Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Assoc.*, 771 F.3d 1230, 1240 (10th Cir. 2014). While neither Party framed its respective argument with this standard, the court will first consider whether Port-a-Pour has good cause to seek modification of the Scheduling Order, and then whether it satisfied Rule 15(a).

**II.     Good Cause**

Rule 16(b)(4) provides that a scheduling order may be modified upon the showing of good cause and with the court's consent. Fed. R. Civ.P. 16(b)(4). Consideration of good cause is different than the more lenient standard for Rule 15(a), for it does not focus on the bad faith of the movant or prejudice to the nonmoving party. *See Pumpco, Inc. v. Schenker Inern., Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). Instead, it focuses on whether the moving party has been diligent in seeking to modify the scheduling order to permit the proposed amendment. *Id.*

Defendants argue that Plaintiff has not been diligent in dismissing its patent infringement claims, which has caused Defendants to expend significant resources in developing defenses to the patent infringement claims and exploring how the patents are "inextricably knotted" with the trade secret claims. [#218 at 10]. This court respectfully disagrees. Both Parties proceeded in discovery, focused on the trade secret issues, rather than the patent issues, causing District Judge Daniel to *sua sponte* consider whether the patent infringement claims were ready for trial. In his Order dated February 3, 2015, Judge Daniel observed that "neither side has designated an expert in connection with these claims"; neither motion for partial summary judgment addressed the

claims in the patent in any detail, discussed disputed terms in the patents, or asked for an interpretation of the claims. [#195 at 2]. He concluded that "[t]he patent claims are thus relatively undeveloped and lacking in detail, as are Defendants' counterclaims of noninfringement and invalidity." [*Id.*] The court then set a hearing for February 26, 2015 on the patent issues, after which Port-a-Pour attempted to withdraw the patent infringement claims on March 6, 2015. [#205]. Defendants concern at that time that a dismissal without prejudice could subject them to further litigation at a later time was valid. [#206].

But Port-a-Pour represented in the proposed Scheduling Order filed on April 1, 2015 [#211 at 17] and to this court during the conference on April 8, 2015 that it was willing to dismiss the patent infringement claims with prejudice, or in the alternative to enter into a stipulation or covenant not to sue the defendants for infringement of the patents. [*Id.*] Had Plaintiff simply provided an unconditional covenant not to sue, the court would no longer have subject matter jurisdiction over the patent infringement claims or patent counterclaims any longer to be entertaining this instant motion. *See Already, LLC v. Nike, Inc.*, 133 S.Ct. 721 (2013). Instead, Plaintiff conditioned its covenant not to sue Defendants on both Patents-in-Suit both for the past and future infringement on this court's grant of the instant motion [#215-2].

In any case, the dismissal of these claims for patent infringement will then trigger the covenant not to sue and will ultimately alleviate any potential concern that these Patents-in-Suit will be re-asserted against Defendants. [#215-2]. Once the covenant not to sue is triggered, the court will be divested of jurisdiction over the counterclaims of non-infringement and invalidity. *See Dow Jones & Co., Inc. v. Ablaise*, 606 F.3d 1338, 148 (Fed. Cir. 2010). Based on the record before it, the court finds that Plaintiff has been diligent and presents good cause for modification of the Scheduling Order.

8

## II.     Rule 15(a)

Rule 15(a) instructs courts that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Typically, courts only deny leave to amend when the non-moving party has demonstrated that there is undue delay, undue prejudice to the opposing party, dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). For the reasons set forth above, this court concludes that there has not been undue delay in moving for the amendment.

Defendants' argument that it will be prejudiced because there has been a "complete change in the thrust and scope of this case that will require additional discovery" if the court dismisses the patent infringement claims is belied by Judge Daniel's findings and the record in this case. Regardless of the number of times the word "patent" was uttered in a deposition [#218 at 6], Judge Daniel specifically noted that "Defendants state that at his deposition Oberg did not answer questions about the claims of the patents; indeed, Oberg's attorney alleged objected to the questions about the claims as calling for legal conclusions." [#195 at 2]. To now state that Defendants focused the depositions of the patents' putative inventors, Neil Oberg and Jerome Doherty, on the patent claims [#218 at 6] is contrary to Defendants' prior position, and troubling to this court. Indeed, in the Final Pretrial Order executed on behalf of Defendants by the same counsel filing the response for this instant motion, the Parties unequivocally represented that "[d]iscovery has been completed." [#168 at 19]. There is no mention that if the court granted Defendants' then-pending motion for partial summary judgment related to the patent infringement claims (that would have the same effect as dismissing out the patent infringement claims), that there would need to be additional discovery because discovery had been "focused"

on the patent infringement claims. [*Id.*]  In the explanation of the claims and defenses, there is no discussion that the patent infringement claims are "inextricably knotted" with the trade secret claims such that if the patent infringement claims were dismissed, discovery would need to be re-opened. [*Id.* at 2-7].

Defendants also argue bad faith on the part of Plaintiff by essentially asking "the Court to accept its statement of 'Never mind' about the patent claims." [#218 at 9].  While the court understands Defendants' frustration, Defendants have failed to cite any authority to suggest that this court should not permit dismissal of the patent infringement claims that Plaintiff clearly does not wish to prosecute and Defendants clearly would no longer be at risk of infringing, simply as a consequence for Plaintiff's failure to dismiss earlier.  Indeed, this court is always guided by Rule 1 of the Federal Rules of Civil Procedure, which requires it to construe and administer the Rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  This court is hard-pressed to understand, in light of the covenant not to sue, how forcing the Parties to litigate the patent infringement claims, attendant defenses, and counterclaims – particularly in light of the additional discovery, expert disclosures, and other expenses associated with litigation – would serve the purpose of this court or benefit the Parties.

## III.    Sanctions

Defendants argue that if the court permits the dismissal of the patent claims, it should only come with "ameliorative conditions." [#218 at 11].  Despite Defendants' other arguments, this appears to be the core of their concern over dismissal of the patent claims. Defendants seek the opportunity to move to modify the existing preliminary injunction to remove all references to, and orders based upon, the patents; to re-open discovery; and costs and fees associated with

the modification of the preliminary injunction and the "almost two years of litigation focused on the patents." [*Id.* at 11-12].

Given the fact that Plaintiff's covenant not to sue is immediately effective upon the court's grant of the instant motion, it is appropriate that Defendants be permitted seek modification of the existing preliminary injunction to remove references to the infringement of the '886 Patent. This should, however, only affect the chemical metering system, because the court did not base the preliminary injunction of "[t]he manufacture, sale, advertisement of, or offer for sale the following horizontal silos derived from the Port-a-Pour Auxiliary Silo: the Lo-Pro 1600, Lo-Pro 6-11 or 6-12, either as standalone products or as components of plants" on the likelihood of infringement of the '886 Patent.[1]  [#122 at 21, ¶ 40; 43-46].

For the reasons stated above, I conclude that the re-opening of discovery is not warranted. The Parties, including Defendants, represented to this court that discovery was complete, at a time that there was no question as to whether the patent infringement claims were still in the case. [#168 at 1, 3, 19]. Defendants have not persuaded this court that the dismissal of patent infringement claims – which would also have been dismissed had Defendants prevailed on their Motion for Partial Summary Judgment – should permit any new discovery to "refocus" the inquiry or that the Parties focused their prior discovery on the patent infringement claims. Indeed, District Judge Daniel expressly found that the record for the patent infringement claims were relatively undeveloped; the terms in dispute had not been identified or construed; and the Parties had failed to identify any expert witnesses. [#195].

Finally, to the extent that Defendants believe that they are entitled to attorney's fees and costs associated with either the modification of a preliminary injunction or the two years of

---

[1] The '904 Patent was not subject to the Parties' briefing or the court's preliminary injunction. [#122 at 43-46, 52].

11

litigation over patent infringement, Defendants cite no authority that such a request must be entertained by the court now. [#218 at 11-12]. Defendants may move for the award of attorney's fees and costs under 35 U.S.C. § 285; 28 U.S.C. § 1927; or another applicable standard at the end of trial when the court can consider all such motions together. The record before this court does not suggest that the piecemeal approach urged by Defendants would materially assist in the final disposition of this matter.

Accordingly, for the reasons set forth herein, this court respectfully RECOMMENDS that:

(1) Port-a-Pour's Motion to Amend Complaint to Withdraw Patent Infringement Claims [#215] be GRANTED;

(2) NO FURTHER DISCOVERY be permitted;

(3) Defendants be PERMITTED, at their election, move the court separately to modify the existing Preliminary Injunction; and

(4) Defendants' request to move the court immediately for attorney's fees and costs be DENIED WITHOUT PREJUDICE.

DATED: July 28, 2015

BY THE COURT:

s/ Nina Y. Wang
Nina Y. Wang
United States Magistrate Judge